## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| JEREMY O. FRANKLIN, | |
| Plaintiff, | CIVIL ACTION NO.: 4:24-cv-00186 |
| v. | |
| DEPUTY CHIEF ROB BRYAN; CAPTAIN JARED AKINS; LT. COLSON; SGT. SAXON; DETECTIVE WINSKEY; OFFICERS HENDRIX, STANCIL, RINER, WEBB, AMANDA LANE, and TEN JOHN DOES in their individual and official capacities as Police Officers for the Statesboro Police Department; CITY OF STATESBORO, GEORGIA; DETECTIVE WILDER and TEN JOHN DOES, in their individual and official capacities as Police Officers for the Hinesville Police Department; CITY OF HINESVILLE, GEORGIA, | |
| Defendants. | |

### O R D E R

Plaintiff Jeremy Franklin brought this action against the Georgia cities of Hinesville and Statesboro, and numerous law enforcement officials from both cities, asserting nine Counts that stem from his alleged malicious prosecution. (Doc. 1.) Two motions to dismiss are currently before the Court. First, Defendant City of Hinesville filed a Motion to Dismiss all Counts against it, arguing each Count is barred by both the statute of limitations and the theory of municipal immunity. (Doc. 19.) Second, Defendants Jared Akins, "Officer Hendrix," "Officer Riner," and "Sgt. Saxon," of the Statesboro Police Department (hereinafter, the "Statesboro Officers"), filed a joint Motion to Dismiss all claims against them. (Doc. 34.) They likewise argue that all claims

against them are untimely, barred by immunity, and fail as a matter of law.  (Id.)  For the below

reasons, the Court **GRANTS** Defendant City of Hinesville's Motion to Dismiss, (doc. 19), and

**GRANTS in part** and **DENIES in part** the Statesboro Officers' Motion to Dismiss, (doc. 34).

## BACKGROUND

Plaintiff is a resident of the City of Statesboro, in Bulloch County, Georgia.  (Doc. 1, p. 3.)

Throughout his Complaint, Plaintiff refers to the municipal Defendants as the "City of Hinesville"

and the "City of Statesboro."  (See generally id.)  Plaintiff also separates the Defendants who are

individuals into two groups.  He refers to the following individuals, who are supposedly police

officers for the City of Statesboro, using the term "Defendants Statesboro": "Deputy Chief Rob

Bryan," "Captain Jared Akins," "Lt. Colsen," "Sgt. Saxon," "Detective Winskey," "Officer

Hendrix," "Officer Stancil," "Officer Riner," "Officer Webb," "Amanda Lane," and "Ten John

Does."  (Id. at pp. 1–3.)  Likewise, to denote Defendant "Detective Wilder" and another "Ten John

Does," who are allegedly police officers for the City of Hinesville, Plaintiff uses the term

"Defendants Hinesville."  (Id.)

Plaintiff states in his Complaint that "[he] and Faith E. Ferrell welcomed the birth of their

child AZF in 2019."  (Id. at p. 4.)  Thereafter, "[Plaintiff] and Ms. Ferrell married on August 17,

2020."  (Id.)  Plaintiff states that this marriage "legitimized AZF," and that he and Ferrell had

"equal rights" regarding the child.  (Id.)  On January 31, 2021, Plaintiff "retrieved AZF" from his

wife's home in Hinesville.  (Id.)  Without specifying any particular police officers, Plaintiff states

that "Defendants Statesboro" conducted welfare checks on AZF on February 1, 2021, after Ferrell

claimed that Plaintiff did not have authority to take AZF.  (Id.)  Also, again without naming specific

officers, Plaintiff states that "Defendants Hinesville obtained warrants for kidnaping, interference

with custody, and burglary without probable cause" and that "Defendants Hinesville informed

Defendants Statesboro of the warrants." (Id.) "Defendants Statesboro" took Plaintiff to the Statesboro police station, where they arrested him "on the Hinesville warrants." (Id. at p. 5.) "Defendants Statesboro also arrested [Plaintiff] for alleged incidents that occurred when Defendants Statesboro invaded [Plaintiff's] home concerning AZF." (Id.)

After his arrest, multiple criminal prosecutions were initiated against Plaintiff. One prosecution was in the Superior Court of Liberty County, where Hinesville is located (the "Hinesville Charges"). (Id. at pp. 5, 7, 9, 11.) Another prosecution was in the Superior Court of Bulloch County, where Statesboro is located (the "Statesboro Charges"). (Id. at pp. 5, 8, 10, 13.) During the pendency of these prosecutions, Defendants incarcerated Plaintiff for several months in the Bulloch, Ware, and Liberty County jails. (Id. at p. 5.) On July 26, 2022, the Liberty County Superior Court entered a *nolle prosequi* in favor of Plaintiff that disposed of all the Hinesville Charges. (Id.) Then, on September 12, 2022, the Bulloch County Superior Court likewise entered a *nolle prosequi* in favor of Plaintiff that disposed of all the Statesboro Charges. (Id.) Plaintiff generally maintains that "[n]one of the Defendants obtained warrants on probable cause" and that "[a]ll Defendants acted under color of state law." (Id.)

Plaintiff filed his Complaint in this Court on August 19, 2024, asserting nine Counts against Defendants.[1] (Doc. 1.) Three Counts are against "Defendants Hinesville and the City of Hinesville," asserting various forms of malicious prosecution based on the "the Hinesville (Liberty County) charges against [Plaintiff that] terminated in [Plaintiff's] favor on July 26, 2022." (Id. at

---

[1] Plaintiff makes no statements regarding the Court's supplemental jurisdiction over his state law claims, alleging only that "[t]his Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises as a civil rights action under the laws of the United States." (Doc. 1, p. 3.) Even so, all parties seemingly assume that supplemental jurisdiction exists over the state law claims. (See generally id.; doc. 19; doc. 34.) Despite Plaintiff's failure to make an affirmative allegation, the Court finds that Plaintiff's state and federal law claims "form part of the same case or controversy" under 28 U.S.C. § 1367. Accordingly, because there are no grounds for declining to exercise jurisdiction under § 1367(b)–(c), the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

pp. 7, 9, 11.)  Specifically, Count I is for "Fourth Amendment Malicious Prosecution [Under] 42 U.S.C. § 1983," (id. at pp. 6–7); Count III is for "Malicious Prosecution [under] Georgia Law," (id. at pp. 9–10); and Count V is for "Fourteenth Amendment Malicious Prosecution [Under] 42 U.S.C. § 1983," (id. at pp. 11–12).  Additionally, Count VII is against the City of Hinesville only, asserting "Municipal Liability Under 42 U.S.C. § 1983."  (Id. at pp. 13–14.)

Another four Counts assert essentially the same claims in relation to Statesboro.  Again, three Counts are for malicious prosecution, this time against "Defendants Statesboro and the City of Statesboro" based on "the Statesboro (Bulloch County) charges against [Plaintiff that] terminated in [Plaintiff's] favor on September 12, 2022."  (Id. at pp. 8, 10, 13.)  Specifically, Count II is for "Fourth Amendment Malicious Prosecution [Under] 42 U.S.C. § 1983," (id. at pp. 7–8); Count IV is for "Malicious Prosecution [under] Georgia Law," (id. at pp. 10–11); and Count VI is for "Fourteenth Amendment Malicious Prosecution [Under] 42 U.S.C. § 1983," (id. at pp. 12–13).  Like with Hinesville, one additional Count is against only the City of Statesboro: Count VIII for "Municipal Liability Under 42 U.S.C. § 1983."[2]  (Id. at pp. 14–15.)  Finally, Count IX is for "Attorney Fees [Under The] Civil Rights Attorney's Fees Awards Act of 1976 [in] 42 U.S.C. § 1988."  (Id. at p. 15.)

The City of Hinesville filed a Motion to Dismiss all the claims against it.  (Doc. 19.) Plaintiff filed a Response to this Motion, (doc. 32), and the City of Hinesville filed a Reply, (doc. 35).  Separately, the Statesboro Officers—"Captain Jared Akins," "Officer Hendrix," "Officer

---

[2]  In listing his claims, Plaintiff labels both his seventh and eighth claims as "Count VII."  (See doc. 1, pp. 13–14.)  Thereafter, Plaintiff labels his ninth and final claim "Count VIII."  (Id. at p. 15.)  For purposes of this Order, the Court will refer to the claim that appears eighth in the Complaint—for "municipal liability" against the City of Statesboro—as Count VIII.  (See id. at pp. 14–15.)  Likewise, the Court will refer to the ninth and final claim—for attorney's fees—as Count IX.  (See id. at p. 15.)

Riner," and "Sgt. Saxon,"[3]—filed a Motion to Dismiss all the claims against them.  (Doc. 34.)  Plaintiff filed a Response to this Motion.  (Doc. 42.)  The Statesboro Officers filed a Reply.  (Doc. 48.)

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft, 556 U.S. at 678.  Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a

---

[3]  Beyond these titles, the relevant filings do not contain full names for these Defendants.  (See, e.g., doc. 1; doc. 34.)

dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

### I. Plaintiff's Claims against the City of Hinesville are Dismissed.

The City of Hinesville ("Hinesville") moves to dismiss all four substantive Counts asserted against it. Three of those Counts are brought pursuant to Section 1983: Count I for "Fourth Amendment Malicious Prosecution," Count V for "Fourteenth Amendment Malicious Prosecution," and Count VII for "Municipal Liability." (Doc. 1, pp. 6–7, 11–12, 13–14.) The fourth Count, Count III, is for "Malicious Prosecution [under] Georgia Law." (Id. at pp. 9–10.) In its Motion to Dismiss, Defendant Hinesville argues the Court should dismiss all these Counts because each of them is barred—both by the applicable statute of limitations and by municipal immunity. (Doc. 19.) The Court agrees.

#### A. Plaintiff's Claims against the City of Hinesville are Untimely.

First, Hinesville is correct in asserting that Plaintiff's claims against it are untimely. (See id. at pp. 4–7.) All the claims against Hinesville are subject to the same two-year statute of limitations. Section 1983 claims like Counts I, V, and VII are "subject to the statute of limitations governing personal injury actions in the state where the [suit] has been brought"—here, that state is Georgia. McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing Wilson v. Garcia, 471 U.S. 261, 275–76 (1985)). Malicious prosecution claims brought under Georgia law, as in Count III, are likewise governed by Georgia's personal injury statute of limitations. See Banta v. Quik-Thrift Food Stores, 370 S.E.2d 3, 4 (Ga. Ct. App. 1988). The Georgia statute of limitations for

personal injury actions—which thereby governs all four Counts against Hinesville—requires that claims "be brought within two years after the right of action accrues."  O.C.G.A. § 9-3-33.

Further, each of the four Counts are governed by similar standards for determining when the two-year limitations period began to accrue.  The date of accrual for Section 1983 claims is set by federal law.  Smith v. Mitchell, 856 F. App'x 248, 249 (11th Cir. 1986).  That law provides that accrual begins when "the facts which would support a [Section 1983] cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting Rozar v. Mullis, 85 F.3d 556, 561–62 (11th Cir. 1996)).  The Eleventh Circuit Court of Appeals has accordingly established that, for Section 1983 malicious prosecution claims, accrual begins "when the prosecution against the plaintiff terminates in his favor."  Laskar v. Hurd, 972 F.3d 1278, 1285 (11th Cir. 2020).  As to Georgia malicious prosecution claims, state law likewise dictates that accrual begins on the date of a favorable termination to the criminal proceedings.  See Banta, 370 S.E.2d at 5 ("[A] suit for malicious prosecution must be brought within [two] years after the underlying criminal prosecution terminated in plaintiff's favor.").  In either case—whether the malicious prosecution claim is under Section 1983 or Georgia law—a *nolle prosequi* disposing of the charges against a plaintiff constitutes a "favorable termination" that triggers accrual.[4]  See Harris v. Rambosk, No. 2:18-cv-17, 2018 WL 5085721, at *5 (M.D. Fla. Oct. 18, 2018) ("[T]he Eleventh Circuit [has] noted that 'courts have found favorable termination to exist by virtue of . . . an entry of a nolle

---

[4]  To be sure, under both Section 1983 and Georgia law, not all *nolle prosequi* filings are necessarily a "favorable termination" for accrual purposes.  A *nolle prosequi* fails to be a "favorable termination" if, for instance, it is "obtained through compromise," Pombert v. Glock, Inc., 171 F. Supp. 3d 1321, 1329 (N.D. Ga. 2016), or "entered [only] on an initial indictment and a new indictment is found," Fehrle v. Mayor and Aldermen of Savannah, No. 4:22-cv-232, 2023 WL 4684913, at *4 (S.D. Ga. July 21, 2023).  However, here, Plaintiff has confirmed that the *nolle prosequi* was a favorable termination by stating that, in both prosecutions, the court "entered a Nolle Prosequi in favor of [Plaintiff] that disposed of all charges."  (Doc. 1, p. 5.)

prosequi.'" (quoting Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998))); see also Pombert v. Glock, Inc., 171 F. Supp. 3d 1321, 1329 (N.D. Ga. 2016) (under Georgia law, "the filing of a nolle prosequi by the prosecutor and dismissal of the action by the trial court constitutes prima facie a termination of the prosecution in favor of the person arrested" (quoting Bailey v. Gen. Apartment Co., 229 S.E.2d 493, 494 (Ga. Ct. App. 1976))).

Hinesville, citing these standards, argues that each claim against it is untimely. According to Hinesville, the two-year limitations period for each of the four Counts began accruing on July 26, 2022—the date that the Hinesville Charges were terminated via the *nolle prosequi* filing. (Doc. 19, pp. 4–7.) Because Plaintiff did not file his Complaint until more than two years later, on August 19, 2024, Hinesville avers that the claims against it are barred by the statute of limitations. (Id.) In response, Plaintiff does not dispute that Georgia's two-year statute of limitations applies or that his claims against Hinesville began accruing on July 26, 2022. (Doc. 32, pp. 2–3.) Plaintiff nevertheless maintains that his claims are timely. (Id.) According to Plaintiff—despite the August 19, 2024, date that appears on the Court's docket—he filed his Complaint on July 24, 2024, two days before the deadline, and the Court's "electronic filing system did not properly record the filing." (Id. at p. 2.)

All the claims against the City of Hinesville (Counts I, III, V, and VII) are untimely. It is undisputed that Plaintiff failed to successfully file his Complaint until after the applicable statute of limitations for each of these claims had expired. The Court has already considered and rejected Plaintiff's argument regarding an alleged error with the electronic filing system. (See docs. 7, 9 & 14.) Indeed, the Court has denied Plaintiff's Motion for a *nunc pro tunc* filing of his Complaint to an earlier date, (doc. 7), denied Plaintiff's Motion for Reconsideration of that Order, (doc. 9), and overruled Plaintiff's Objection to the Order denying his Motion for Reconsideration, (doc.

14).  As the Court explained in those Orders, Plaintiff has not identified any compelling reason to justify a determination that he filed his Complaint at any time other than the August 19, 2024, date in the Court's record.  Because the Complaint was therefore filed more than two years after Plaintiff's claims began accruing on July 26, 2022, the claims are barred by the statute of limitations.

**B.  The City of Hinesville is Immune from Plaintiff's Claims.**

Even if Plaintiff's claims against Hinesville were timely, the claims would still be barred by sovereign immunity and <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690 (1978). Hinesville cannot be held liable for the Section 1983 claims against it because Plaintiff has failed to sufficiently allege that the claims arise from Hinesville's "custom or policy."  <u>Underwood v. City of Bessemer</u>, 11 F.4th 1317, 1333 (11th Cir. 2021) (citing <u>Monell</u>, 436 U.S. at 658).  Likewise, as to the Georgia malicious prosecution claim, Plaintiff has failed to show that Hinesville waived sovereign immunity.  <u>See</u> <u>Bd. of Regents of the Univ. Sys. of Ga. v. Daniels</u>, 446 S.E.2d 735, 736 (Ga. 1994).

First, <u>Monell</u> establishes that municipalities like Hinesville can only be held liable in a Section 1983 action if the plaintiff makes certain showings.  Specifically, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  <u>Underwood</u>, 11 F.4th at 1333 (quoting <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004)).

The second prong of this standard, requiring a "custom or policy," is designed to "ensure[] . . . a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the

9

municipality." <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403–04 (1997) (citing <u>Monell</u>, 436 U.S. at 694).  For a plaintiff to show that a "custom or policy" exists, "it is generally necessary to show a persistent and wide-spread practice." <u>McDowell</u>, 392 F.3d at 1290 (internal quotations omitted); <u>see also</u> <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally[,] random acts or isolated incidents are insufficient to establish a custom or policy.").  Then, to establish that the custom or policy constitutes "deliberate indifference" to a constitutional right, a plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area[,] and the municipality made a deliberate choice not to take any action." <u>Feliciano v. City of Mia. Beach</u>, 847 F. Supp. 2d 1359, 1365 (S.D. Fla. 2012) (citing <u>Gold v. City of Mia.</u>, 151 F.3d 1346, 1350 (11th Cir. 1998)).  Relevant here, "[i]n limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." <u>Weiland v. Palm Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011)).  But, for plaintiffs to satisfy the custom or policy requirement with failure-to-train evidence, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." <u>Id.</u>

Plaintiff's only "custom or policy" allegations against Hinesville appear in Count VII, for "municipal liability under [Section] 1983." (Doc. 1, pp. 13–14.)  Plaintiff alleges in that Count that Hinesville maintained two unconstitutional policies, customs, or practices that caused his injuries: (a) "[i]nitiating and continuing arrests without probable cause;" and (b) "[f]ailing to train officers on the law regarding child custody, and legitimation." (<u>Id.</u> at p. 13.)

Hinesville argues these allegations are insufficient to establish the custom or policy required for it to be liable under Section 1983. (Doc. 19, pp. 7–9.)  As to the alleged custom of

"arrests without probable cause," Hinesville points out that "Plaintiff does not even attempt to plead any additional instances of this alleged policy in action which would be sufficient to establish a 'longstanding and widespread practice.'" (Id. at p. 8.) Likewise, Hinesville asserts that Plaintiff has not established custom through his failure-to-train allegation because he has not alleged a "history of similar constitutional violations." (Id. at p. 9.) Indeed, according to Hinesville, Plaintiff "has pled no more than bare conclusory allegations that [it] has failed to adequately train its officers on this narrow area of the law." (Id.)

The Court agrees: Hinesville cannot be held liable for the Section 1983 claims asserted in Counts I, V, or VII. Two of Plaintiff's Section 1983 claims against Hinesville—Counts I and V— do not include any allegations of the existence of any custom or policy. The only custom or policy allegations Plaintiff does make—which are in Count VII—are inadequate to make Hinesville liable under Section 1983. Plaintiff merely states in that Count that Hinesville had a policy of making arrests without probable cause and of failing to train, without giving any specific facts that support those assertions. Not only does Plaintiff therefore fail to allege a "persistent and wide-spread practice" or "similar constitutional violations," but his claims regarding custom are accurately characterized as "bare conclusory allegations." Such allegations are not entitled to the assumption of truth. Ashcroft, 556 U.S. at 678 (a plaintiff's conclusory statements "are not entitled to the assumption of truth" when ruling on a motion to dismiss).

Likewise, Hinesville is also immune from Plaintiff's state law malicious prosecution claim, asserted in Count III. (Doc. 1, pp. 9–10.) Whereas Monell governs whether Hinesville can be liable for Plaintiff's Section 1983 claims, Georgia's sovereign immunity doctrine determines whether Hinesville is subject to liability on the state law claim. Under Georgia law, municipal corporations—such as Hinesville—are protected by sovereign immunity unless that immunity is

waived by the General Assembly.  <u>City of Atlanta v. Mitcham</u>, 769 S.E.2d 320, 322 (Ga. 2015);

<u>see also</u> O.C.G.A. § 36-33-1; Ga. Const. art. IX, § II, para. IX.  Where a plaintiff sues a

municipality under state law, the plaintiff bears the burden of establishing waiver.  See <u>Ratliff v.</u>

<u>McDonald</u>, 756 S.E.2d 569, 574 (Ga. Ct. App. 2014) ("[Any] waiver of sovereign immunity must

be established by the party seeking to benefit from that waiver." (quoting <u>McCobb v. Clayton</u>

<u>Cnty.</u>, 710 S.E.2d 207, 209 (Ga. Ct. App. 2011))).  In particular, when it comes to Georgia law

malicious prosecution claims, courts have confirmed that cities are immune from suit unless a

plaintiff demonstrates waiver.  <u>See, e.g.</u>, <u>Bomia v. Ben Hill Cnty. Sch. Dist.</u>, 740 S.E.2d 185, 188–

89 (Ga. Ct. App. 2013) ("Bomia failed to show that the waiver of immunity under O.C.G.A. § 36–

92–2(a) . . . applied to her [state-law] claims for malicious prosecution . . . ."); <u>Reese v. City of</u>

<u>Atlanta</u>, 583 S.E.2d 584, 584–85 (Ga. Ct. App. 2003) (city entitled to governmental immunity

against plaintiff's malicious prosecution claim under Georgia law).

     Here, Hinesville correctly argues that Plaintiff has done nothing to meet his burden of

establishing that Hinesville's sovereign immunity has been waived as to the state law malicious

prosecution claim.  (Doc. 19, pp. 5–6.)  In his Response, Plaintiff does not dispute the assertion

that he has failed to establish waiver.  (<u>See generally</u> doc. 32.)  Thus, even if the claim were timely,

Count III for malicious prosecution under Georgia law would be barred as to Hinesville given that

Plaintiff has failed to demonstrate a waiver of sovereign immunity.

     Because all of Plaintiff's claims against Hinesville are therefore barred, the Court

**GRANTS** Hinesville's Motion to Dismiss.  (Doc. 19.)

## II.     Plaintiff's Claims against the Statesboro Officers are Dismissed in Part.

Plaintiff's Complaint also contains several Counts against the Statesboro Officers and the City of Statesboro that arise from the Statesboro Charges.  (Doc. 1.)  These Counts mirror Plaintiff's claims against Hinesville.  Three claims are against "Defendants Statesboro and [the] City of Statesboro": Count II (for "Fourth Amendment Malicious Prosecution"); Count IV (for "Malicious Prosecution [under] Georgia Law"); and Count VI (for "Fourteenth Amendment Malicious Prosecution").  (Id. at pp. 7–8, 10–11, 12–13.)  One claim, Count VIII[5] (for "Municipal Liability" under Section 1983),  is against the "City of Statesboro" only.  (Id. at pp. 14–15.)

As an initial matter, the Court addresses some apparent confusion among the parties.  In his Complaint, Plaintiff asserts multiple claims against the City of Statesboro.  (Doc. 1.)  He also indicates in the Complaint's heading that the Statesboro Officers are Defendants "in Their Individual and Official Capacities as Police Officers for the Statesboro Police Department."  (Id. at p. 1.)  The Statesboro Officers (Akins, Saxon, Hendrix, and Riner) filed a Motion to Dismiss that makes the same Monell and immunity arguments that the Court found persuasive in its analysis of Hinesville's Motion.  (Doc. 34.)  These arguments ordinarily might compel the Court to dismiss the claims against the City of Statesboro under Rule 12(b)(6).  However, review of the record reveals that Plaintiff has only filed proof of service for the individual Statesboro Officers— not for the City of Statesboro.  Furthermore, even though the Statesboro Officers argue in their Motion that the Court should dismiss Plaintiff's claims against the City of Statesboro, the City did not formally join in that Motion and has not otherwise appeared in this action.  (Id.)

The Court accordingly cannot assert jurisdiction over the City of Statesboro at this time. Laster v. City of Albany, Ga., Water, Gas & Light Co., 517 F. App'x 777, 777 (11th Cir. 2013).

---

[5] See supra note 2.

("Valid service of process is a prerequisite for a federal court to assert personal jurisdiction over a defendant."); see also Kabbaj v. Obama, 568 F. App'x 875, 881 (11th Cir. 2014) (district court lacked jurisdiction over defendants "who never entered an appearance or filed a motion or other responsive pleading that waived insufficient service of process"). Moreover, without proof of service for the City, it is also unclear whether jurisdiction exists over the Statesboro Officers in their official capacities.[6] To ensure that any potential rulings are jurisdictionally valid, the Court therefore **DENIES without prejudice** the Statesboro Officers' Motion insofar as it seeks dismissal of Plaintiff's claims against the City of Statesboro or the Statesboro Officers in their official capacities. The Court **DIRECTS** the parties to file supplemental briefing within **fourteen (14) days** from the date of this Order addressing whether, under the present circumstances, the Court can exercise jurisdiction over the City of Statesboro and the Statesboro Officers in their official capacities. The Court also **NOTIFIES** the parties that it will entertain any motions filed within the same **fourteen (14) day** deadline that might obviate the need to address this question of law and allow the Court to rule on the Statesboro Officers' compelling arguments for dismissal under Monell and the doctrine of municipal immunity.

With that, the Court will only consider at this time whether dismissal is warranted as to the claims against the Statesboro Officers in their individual capacities. Plaintiff asserts Counts II, IV, and VI against both the Statesboro Officers in their individual capacities and the City of Statesboro.

---

[6] The Eleventh Circuit has not addressed the issue of how to serve a state officer sued in his official capacity. See Hudson v. Morris, No. 4:20-cv-120, 2021 WL 2188571, at *2 (S.D. Ga. May 28, 2021) ("Some courts have held that service of process for public employees sued in their official capacity is [] governed by the rule applicable to serving individuals," while other "courts have held that state officers sued in their official capacities must be served in accordance with Rule 4(j)[, governing service on municipalities]." 4B Wright & Miller, Federal Practice & Procedure § 1109 (4th ed.); compare Caisse v. DuBois, 346 F.3d 213, 216 (1st Cir. 2003) ("[S]ervice of process for public employees sued in their official capacities is governed by the rule applicable to serving individuals."); with Moore v. Hosemann, 591 F.3d 741, 747 (5th Cir. 2009) ("A number of other courts have held that state officers sued in their official capacities are subject to service under [R]ule 4(j) or its predecessor.").

The Statesboro Officers argue in their Motion that these claims should be dismissed because, among other things, Plaintiff fails to establish a "custom or policy" under Monell, or a waiver of sovereign immunity under Georgia law. (Doc. 34, pp. 5–7, 9–15.) However, though compelling, these arguments are not applicable to the individual-capacity claims. Hafer, 502 U.S. at 25 ("[T]he plaintiff in a personal-capacity [Section 1983] suit need not establish a connection to governmental 'policy or custom . . . .'"); see also Lathrop v. Deal, 801 S.E.2d 867, 876 (Ga. 2017) (Georgia-law suits against state officers in their individual capacities generally are not barred by sovereign immunity). The Statesboro Officers' remaining arguments for dismissing these Counts are: (A) Count VI is not a cognizable claim, (doc. 34, pp. 8–9); and (B) Counts II and IV are untimely and fail to allege "an arrest pursuant to legal process," (id. at pp. 5–8, 11–12). For the reasons explained below, the Court agrees with the first argument but rejects the second.

### A.    Count VI is Dismissed as to the Statesboro Officers in their Individual Capacities because it does not State a Cognizable Claim.

In Count VI of his Complaint, Plaintiff attempts to bring a Section 1983 claim against the Statesboro Officers for "Fourteenth Amendment Malicious Prosecution." (Doc. 1, pp. 12–13.) To state a claim under Section 1983, a plaintiff must identify a specific constitutional right that the defendant allegedly violated. See, e.g., Martinez v. Ashtin Leasing, Inc., 417 F. App'x 883, 884 (11th Cir. 2011) ("In an action for relief under § 1983, plaintiffs 'must establish that they were deprived of a right secured by the Constitution or laws of the United States.'" (quoting Focus on the Fam. v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276–77 (11th Cir. 2003))). The constitutional right implicated when the government prosecutes an individual without probable cause is the Fourth Amendment right to be free from unreasonable search and seizure. See Wood v. Kesler, 323 F.3d 872, 881–83 (11th Cir. 2003). The Fourteenth Amendment, on the other hand, does not provide a right to be free from malicious prosecution. See Whiting v. Traylor, 85 F.3d

15

581, 584 n.3 (11th Cir. 1996) ("[N]o 'substantive' due process right exists to be free from a malicious prosecution." (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994))).  The Eleventh Circuit has accordingly confirmed that "a malicious prosecution claim arises under the Fourth Amendment, not [the] Fourteenth Amendment . . . ." <u>Rehberg v. Paulk</u>, 611 F.3d 828, 853 (11th Cir. 2010).  Therefore, to state a malicious prosecution claim under Section 1983, a plaintiff must allege that the prosecution deprived him of his rights under the Fourth Amendment.  <u>Wood</u>, 323 F.3d at 881 ("To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures."); <u>see also</u> <u>Uboh</u>, 141 F.3d at 1002–04; <u>Whiting</u>, 85 F.3d at 584–86 (11th Cir. 1996).

In their Motion, the Statesboro Officers argue that the Court should dismiss Count VI because "[t]he Fourth Amendment, and not the Fourteenth Amendment" is the source of the constitutional right against malicious prosecution.  (Doc. 24, pp. 8–9.)  In his Response, Plaintiff "concedes" that his "Fourteenth Amendment malicious prosecution claim (Count VI) fails as a matter of law."  (Doc. 42, p. 6.)  Count VI of the Complaint is therefore **DISMISSED** as to the Statesboro Officers in their individual capacities.  (Doc. 1, pp. 12–13.)

### B.    Counts II and IV Survive Dismissal to the Extent They Assert Claims against the Statesboro Officers in their Individual Capacities.

That leaves two claims against the Statesboro Officers in their individual capacities: Count II for Fourth Amendment malicious prosecution under Section 1983; and Count IV for malicious prosecution under Georgia law.  (Doc. 1, pp. 7–8, 10–11.)  The Statesboro Officers' only arguments for dismissing the individual-capacity claims in Counts II and IV are that the claims were untimely filed, and that they do not allege "an arrest pursuant to legal process."  (Doc. 34, pp. 5–8, 11–12.)  Because both these arguments fail, Counts II and IV survive dismissal to the extent they assert claims against the Statesboro Officers in their individual capacities.

The Court first rejects the Statesboro Officers' argument that the claims against them are untimely.  (See id. at pp. 5–7, 11–12.)  As explained above, malicious prosecution claims under Section 1983 and Georgia law are both governed by Georgia's two-year statute of limitations for personal-injury actions.  See supra Discussion Section I.A; see also McNair, 515 F.3d at 1173; Banta, 370 S.E.2d at 4; O.C.G.A. § 9-3-33.  Likewise, both types of claims begin accruing when a plaintiff receives favorable termination of the legal proceedings underlying his claim.  See Laskar, 972 F.3d at 1285; Banta, 370 S.E.2d at 5.  The Statesboro Officers argue that Plaintiff's claims against them began accruing upon termination of the Hinesville Charges on July 26, 2022, rather than on September 12, 2022, when the Statesboro Charges terminated.  (Doc. 34, pp. 5–6.)  The rationale for this contention, as best the Court can tell, is that the claims supposedly "aris[e] from Plaintiff's arrest based on the 'Hinesville warrants.'"  (Id. at p. 6.)  Because Plaintiff filed his Complaint on August 19, 2024, more than two years after the Hinesville Charges were terminated, the Statesboro Officers aver that all his claims are untimely under the applicable two-year statute of limitations.  (Id.)

The Court is not persuaded.  Unlike with the Hinesville claims, the face of Plaintiff's Complaint makes it clear that his malicious prosecution claims against the Statesboro Officers are based on "the Statesboro (Bulloch County) charges against [him]."  (Doc. 1, pp. 8, 10.)  Accordingly, both the Section 1983 claims and the Georgia law claim began accruing when those charges terminated in Plaintiff's favor with the *nolle prosequi* on September 12, 2022.  (See id. at p. 5.)  No authority supports the Statesboro Officers' apparent contention that a malicious prosecution claim accrues upon termination of different proceedings from the ones a plaintiff's claim is based upon if the other proceedings happen to take place in the jurisdiction that issued the

arrest warrant.  Because Plaintiff's August 19, 2024, Complaint was filed less than two-years after the Statesboro Charges terminated, Counts II and IV are timely.[7]

Lastly, the Statesboro Officers argue the malicious prosecution claims fail because "Plaintiff does not allege that his arrest on the[ underlying] charges was brought pursuant to legal process."  (Doc. 34, pp. 6–7.)  To state a malicious prosecution claim under Section 1983, a claimant must allege "a seizure 'pursuant to legal process.'"  Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016)).  Similarly, a Georgia law malicious prosecution claim requires an allegation of "detention with judicial process followed by prosecution."  Ferrell v. Mikula, 672 S.E.2d 7, 10 (Ga. Ct. App. 2008).  Under either body of law, sufficient "legal process" has occurred for malicious-prosecution purposes when a plaintiff was detained pursuant to a warrant.  Williams, 965 F.3d at 1158 ("warrant-based seizures" satisfy Section 1983's "pursuant to legal process" requirement); Ferrell, 672 S.E.2d at 10 (Georgia's "under process of law" requirement is met when a person is arrested and detained pursuant to a warrant).

The Statesboro Officers argue that Plaintiff "has not pled that the [Statesboro Charges] relate to an arrest pursuant to legal process . . . [given he] pled that Defendants did not obtain warrants on probable cause on these charges."  (Doc. 34, pp. 6–8.)  The Court rejects this argument.

---

[7] The Court also rejects the Statesboro Officers' argument that Count IV for malicious prosecution under Georgia law is untimely for the additional reason that Plaintiff failed to comply with Georgia's ante litem notice requirement.  (Doc. 34, pp. 11–12.)  The at-issue Georgia statute states that "[n]o person . . . shall bring any action [for money damages] against [a] municipal corporation" without first "present[ing] the claim in writing to the governing authority of the municipal corporation" "[w]ithin six months of the happening of the event upon which a claim . . . is predicated."  O.C.G.A. §§ 36-33-5(a–b).  Even assuming this deadline applied to Plaintiff's claims against the Statesboro Officers in their individual capacities, Plaintiff served ante litem notice on the Statesboro Officers on March 10, 2023, "five months and twenty-eight days after" the September 12, 2022, termination of the Statesboro Charges.  (Doc. 42, p. 6.)  The Statesboro Officers argue this notice was untimely, again, because it occurred more than six months after the Hinesville Charges terminated on July 26, 2022.  (Doc. 34, pp. 11–12.)  For the same reasons the statute-of-limitations argument fails, the Court rejects this ante litem notice argument.

Plaintiff alleges in his Complaint that Hinesville "obtained warrants for kidnaping, interference with custody, and burglary" and that the Statesboro Officers "arrested [Plaintiff] on the Hinesville warrants." (Doc. 1, pp. 4–5.) This is a sufficient allegation of legal process to state a malicious prosecution claim under both Section 1983 and Georgia law.

The Court rejects the Statesboro Officers' suggestion that—by alleging "[n]one of the Defendants obtained warrants on probable cause"—Plaintiff is asserting there was no warrant at all, and thereby no legal process. (Doc. 34, p. 12.) Rather, when construed in the light most favorable to Plaintiff, his allegation is that the Statesboro Officers arrested him pursuant to warrants, after a judge erroneously issued those warrants without probable cause. This assertion that legal process occurred but failed to protect Plaintiff's rights does not run afoul of the "process" requirement—indeed, it is the quintessential allegation in all malicious-prosecution actions. See, e.g., Williams, 965 F.3d at 1158 (in a Section 1983 malicious-prosecution claim, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement") (internal quotations omitted). Courts have accordingly held that malicious-prosecution claimants satisfy the "legal process" requirement when they allege, as Plaintiff does here, that they were seized on a warrant that was issued without probable cause. See id. (Section 1983 claimants may have a malicious prosecution claim "when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.") (internal quotations omitted); see also Kaiser v. Tara Ford, Inc., 546 S.E.2d 861, 867 (Ga. Ct. App. 2001) (plaintiff can state Georgia-law malicious prosecution claim by showing "issuance of a valid warrant" despite a "want of probable cause").

Therefore, despite the Statesboro Officers' arguments, Plaintiff has sufficiently alleged a "legal process" to support the malicious prosecution claims in Counts II and IV. There is

accordingly no basis for dismissing Counts II or IV as to the Statesboro Officers in their individual capacities. Thus, the Court **DENIES** the Statesboro Officers' Motion to Dismiss to the extent it seeks dismissal of Counts II or IV's claims against them in their individual capacities.

## CONCLUSION

For the above reasons, the Court **GRANTS** the City of Hinesville's Motion to Dismiss, (doc. 19), and **GRANTS in part** and **DENIES in part** Defendants Hendrix, Riner, Saxon and Akins's Joint Motion to Dismiss, (doc. 34).

Plaintiff's claims against the City of Hinesville (Counts I, III, V, and VII) are subject to dismissal for being untimely filed and are also barred by immunity. The only other claim against the City of Hinesville, Count IX[8] for attorney's fees, is derivative of the Section 1983 claims and therefore must be dismissed as to the City of Hinesville. See 42 U.S.C. § 1988(b). Counts I, III, V, VII, and IX are therefore **DISMISSED** as to the City of Hinesville. With no remaining claims in this action against the City of Hinesville, the Court **DIRECTS** the Clerk of Court to **DISMISS** the City of Hinesville from this case and **UPDATE** the docket accordingly.

As to Defendants Hendrix, Riner, Saxon, and Akins's Joint Motion to Dismiss, (doc. 34), the Court **GRANTS** the Motion insofar as it seeks dismissal of Count VI for "Fourteenth Amendment Malicious Prosecution" against those Defendants in their individual capacities. Because it is not a cognizable Section 1983 claim, Count VI is **DISMISSED** as to Defendants Hendrix, Riner, Saxon, and Akins in their individual capacities. However, for the reasons explained above, Defendants Hendrix, Riner, Saxon, and Akins's Joint Motion to Dismiss is **DENIED** insofar as it seeks dismissal of Counts II and IV against those Defendants in their individual capacities. In all other respects, Defendants Hendrix, Riner, Saxon, and Akins's Joint

---

[8] See supra note 2.

Motion to Dismiss is **DENIED without prejudice**.  The Court **DIRECTS** the parties to file supplemental briefing within **fourteen (14) days** from the date of this Order addressing whether, under the present circumstances, the Court can exercise jurisdiction over the City of Statesboro and the Statesboro Officers in their official capacities.  The Court also **NOTIFIES** the parties that it will entertain any motions filed within the same **fourteen (14) day** deadline that might obviate the need to address this question of law and allow the Court to rule on the Statesboro Officers' compelling arguments for dismissal under Monell and the doctrine of municipal immunity.

        **SO ORDERED**, this 29th day of September, 2025.

                                                _____
                                                R. STAN BAKER, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT
                                                SOUTHERN DISTRICT OF GEORGIA